**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Philip Scott MAY, Defendant–Appellant.**

No. 92–1289.

United States Court of Appeals,
Tenth Circuit.

April 13, 1995.

Rehearing Denied May 23, 1995.

John M. Hutchins, Asst. U.S. Atty. (Henry L. Solano, U.S. Atty., Kathleen M. Tafoya, Asst. U.S. Atty., with him, on the brief), Denver, CO, for plaintiff-appellee.

Peter Goldberger (Alan Ellis, Pamela A. Wilk, Karen L. Landau with him, on the brief), of Law Offices of Alan Ellis, P.C., Ardmore, PA, for defendant-appellant.

Before ANDERSON and HOLLOWAY, Circuit Judges, and DOWNES, District Judge.*

DOWNES, District Judge.

This is a direct appeal by the defendant-appellant Philip Scott May from his conviction on each of five counts relating to the distribution of cocaine. The indictment charged May and Lisa Michelle Tarasiuk with conspiracy and attempt to commit offenses defined in 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 in violation of 21 U.S.C. § 846, and charged May alone with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and with carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1).[1]

Appellant raises three issues on appeal: (1) whether the Government committed reversible misconduct in closing argument by attacking the integrity of defense counsel and commenting on the defendant's partial silence upon arrest; (2) whether the "cost-of-confinement" fine required by USSG 5E1.2(i) is unauthorized by the Sentencing Reform Act or unconstitutional under the Due Process Clause; and (3) whether the imposition of a fine in an unspecified amount is too vague to be valid.

## Background

The criminal charges in this case stem from a "reverse sting" operation during which the co-defendant, Lisa Tarasiuk, attempted to buy a kilogram of cocaine from an undercover police officer outside of a bar in Denver, Colorado. May was arrested at the scene after the police seized a .45 caliber handgun from his person. II Supp.R. 54, 57. After his arrest, May consented to searches of his home, business and vehicles which resulted in the seizure of cocaine totalling over 220 grams. Over the course of that evening, May made several statements to the police which contained both contradictions and omissions. Ultimately, however, May acknowledged that he had taken money to

---

* The Honorable William F. Downes, United States District Judge for the District of Wyoming, sitting by designation.

1. A sixth count in the indictment charged Lisa Tarasiuk with possession of cocaine in violation of 21 U.S.C. § 844(a).

the bar that night knowing Tarasiuk would use it to buy cocaine. II Supp.R. 28. May also stated that he had loaned Tarasiuk $24,-000 in the month prior to his arrest for her to purchase cocaine and that he had taken the cocaine found in his business and house from Tarasiuk to hold as collateral against the large debt she owed him. II Supp.R. 20–21.

Tarasiuk testified at trial that she had previously worked for May as his secretary, and later as his office manager and book-keeper at his business (Door & Trim). V R. 7–9. She had also begun an affair with him sometime during that employment. V R. 8. Tarasiuk further testified that May brought up the subject of selling cocaine. May told her that she needed to start making some money to support herself since she had lost her job at Door & Trim. V R. 17. According to Tarasiuk, May supplied her with the cocaine she was to sell until October 1991 when May directed her to get more cocaine from other sources. V R. 18–20, 30–31, 40–42. May testified at his trial, admitting that he had previously given Tarasiuk money to purchase cocaine, but maintaining that he had ceased his involvement with any drug transactions prior to the incident on October 29, 1991, and that he only participated in the October 29 transaction because he thought Tarasiuk's life was in danger. VI R. 4–12.

## I

## Prosecutorial Misconduct

May defended against the conspiracy and attempt charges by arguing that he had with-drawn from the conspiracy prior to the trans-action on October 29, 1991, and then partici-pated again only because he believed Tara-siuk's life to be in danger if he did not. In his statements to authorities after he was arrested and advised of his rights, however, he did not mention the alleged withdrawal. In her closing argument, the prosecutor made the following comments with respect to the withdrawal defense:

> Never once did [May] say [to the authori-ties], "[Y]ou know, on the 28th or the 27th, I actually got out of this deal. I stopped doing this, police. I—you know, I got out of this. That was never in any of [the

previous] stories. Never once did he ever tell the police the story of a day or two before I got caught, I decided to get out. That story only came up today.

> Now, on March 29th, he talked with Ken Coffey, and when he talked to Agent Cof-fey right after his arrest, he again re-peated this story. He said, I was only trying to help Lisa. You know, she needed the money. I had fired her. I was trying to help her get some money. He didn't even say then that the day or two before he decided not to do it.

> That has only come up now, now that he has a lawyer, now that he sees withdrawal as a legal defense. That's when that arose."

II Supp.R. 167–68. Appellant argues that such comments combine two fundamental forms of improper prosecutorial conduct: asking the jury to draw adverse conclusions from the defendant's omission of exculpatory facts from prior, post-*Miranda* warning statements; and attacking defense counsel by suggesting without a record basis that consultation with counsel is a likely source of false defense testimony.

█ Since trial counsel lodged no objec-tion at trial to the prosecutor's comments, we review Appellant's claims of prosecutorial misconduct only for plain error. *United States v. Linn,* 31 F.3d 987, 993 (10th Cir. 1994). "Plain errors are those errors that when viewed against the entire record 'seri-ously affect the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Wynne,* 993 F.2d 760, 766 (10th Cir.1993) (quoting *United States v. Bowser,* 941 F.2d 1019, 1021 (10th Cir.1991) (quoting *United States v. Young,* 470 U.S. 1, 15–16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985))).

## A. Attack on Defense Counsel

█ The principal issue to be resolved is not whether the prosecutor's comments were inappropriate, but whether such comments constitute misconduct rising to the level of plain error. The Supreme Court has recog-nized that the distinction between acceptable and improper advocacy is not exact. *United States v. Young,* 470 U.S. 1, 7, 105 S.Ct. 1038, 1042, 84 L.Ed.2d 1 (1985). Nevertheless,

"counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds ... [and] must not be permitted to make unfounded and inflammatory attacks on the opposing advocate." *Id.* at 8–9, 105 S.Ct. at 1042–43. To determine whether the prosecutor's comments constitute such an attack on defense counsel seriously affecting the fairness of defendant-appellant's trial, we must view the comments in the context of the entire record before the jury. *Id.* at 11, 105 S.Ct. at 1044; *United States v. Pena*, 930 F.2d 1486, 1491 (10th Cir.1991).

■ In his defense at trial, May attempted to explain the inconsistencies in his prior statements to the authorities. The government argues that the comment made by the prosecutor that the defendant was now asserting a new withdrawal defense at trial was a fair comment on the evidence presented. The government contends that the prosecutor was not attacking the credibility of defense counsel but rather was challenging the credibility of the defendant's defense. *See United States v. Vera*, 701 F.2d 1349, 1361 (11th Cir.1983).[2] The government further contends that the prosecutor was merely stating at what point in the chronology of events the defendant told this "new story."

Defendant-appellant argues that there was no basis for suggesting that the withdrawal defense "only [came] up now, now that he has a lawyer...." In support of his argument that the prosecutor's comments constitute reversible misconduct, defendant-appel-

lant cites first to *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). In *Berger*, the Supreme Court admonished the prosecuting attorney's improper suggestion that defense counsel "can twist the questions, ... can sit up in their offices and devise ways to pass counterfeit money." *Id.* at 88, 55 S.Ct. at 633. The Court determined that "while [the United States Attorney] may strike hard blows, he is not at liberty to strike foul ones.... [I]mproper suggestions, insinuations and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none." *Id.* Ultimately, the Supreme Court found that the prosecutor's argument prejudiced the defendant Berger, especially in light of the determination that the case against Berger was not strong. *Id.* at 89, 55 S.Ct. at 633. The Court also noted that "[*Berger* was] not ... a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." *Id.*

Defendant-appellant also relies on two opinions rendered by this Court. In *United States v. Rios*, 611 F.2d 1335 (10th Cir.1979), we held that the prosecuting attorney's assertion in rebuttal argument that important defense testimony was contrived by defense counsel's investigator, with no factual basis to justify such a charge, was an attack on defense counsel amounting to prejudicial error.[3]

2. In *Vera*, the prosecutor made the following remarks during closing argument:

Now, competent and able counsel for Mr. Posada will claim, and you have got to admit that it is his house, you have got to admit that he is seen carrying boxes, will claim that he doesn't know what is in the boxes. And I ask you, how credible is that, in light of these circumstances? One, it is his house. It is his small shed.

701 F.2d at 1361. Posada contended that by making these remarks, the prosecutor put defense counsel's credibility in issue, thereby depriving him of his Sixth Amendment right to effective assistance of counsel. The Eleventh Circuit Court of Appeals rejected this argument, however, finding that "the prosecutor was not attacking the credibility of defense counsel but rather was challenging the credibility of Posada's defense." *Id.*

3. In *Rios*, the prosecution presented serious incriminatory testimony from certain witnesses, the Vega brothers, identifying appellant Rios as "El Senor," the heroin supplier. 611 F.2d at 1341. Later the defense presented testimony that the same witnesses had said, instead, that they got their heroin from an "El Senor" in Nogales. *Id.* In closing rebuttal argument, the prosecutor attacked defense counsel and Mr. Pfeffer, the defense counsel's investigator, on this point, stating:

That El Senor from Nogales was put in there from [defense counsel], and it was put there, ladies and gentlemen of the Jury, to confuse you. And I do ask you to search your memories about that. Mr. Jesperson said that there was an El Senor in Arizona or Nogales, he might have even said Nogales, and he is also the guy that said that this fellow, Eddie Vega, was Slick Eddie.

*Id.* at 1341–42. In reaching that holding, we relied on our earlier unpublished opinion in *United States v. Siviglia,* No. 76–1914 (10th Cir. 6/5/78). In *Siviglia,* the prosecuting attorney had argued that a witness had lied because defense counsel had told him to do so. We found that such comments constituted "gross prosecutorial misconduct requiring reversal of Siviglia's conviction, even though no trial objection was lodged. The statements constitute[d] plain error affecting substantial rights." *Id.,* slip op. at 33. In this case, however, the prosecutor's comments are not as egregious or direct as those made in the cases relied on by appellant.

Upon review of the prosecutor's comments in the context of the entire record, we hold that the brief reference to appellant's lawyer does not amount to an "inflammatory attack" on defense counsel rising to the level of plain error. "[T]he plain-error exception to the contemporaneous-objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.'" *Young,* 470 U.S. at 15, 105 S.Ct. at 1046 (quoting *United States v. Frady,* 456 U.S. 152, 163, n. 14, 102 S.Ct. 1584, 1592, n. 14, 71 L.Ed.2d 816) (1982). Viewed in context, the prosecutor's comments, although arguably inappropriate, were not such as to result in a miscarriage of justice or prejudicial error.

B. Comment on Post–Arrest Silence

■ Defendant-appellant further argues that the prosecutor's comments were an impermissible reference to his post-arrest silence. Specifically, appellant contends that the thrust of the comments was not to point out inconsistencies between May's trial testimony and his post-arrest statements, but was instead to suggest that May was guilty because an innocent person would have presented his withdrawal contention to the arresting officers. We do not agree. In the first instance, the record indicates that May never formally invoked his right to remain silent; rather, it appears that May was forthcoming with information and simply chose to tell various versions of his "story" when speaking to the authorities. In any event, even if it can be said that May partially invoked his right to remain silent, the prosecutor's comments do not constitute a violation of May's due process rights.

In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the United States Supreme Court established the holding that the use for impeachment purposes of a defendant's post-arrest and post-*Miranda*-warning silence violates the Due Process Clause of the Fourteenth Amendment.[4] *Id.* at 619, 96 S.Ct. at 2245. "This rule is based upon a recognition that it is fundamentally unfair for the government to inform a defendant of his right to remain silent and then ask at trial that a negative inference be drawn from that silence." *United States v. Canterbury,* 985 F.2d 483, 486 (10th Cir.1993). Then in a later Supreme Court case, *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), the defendant argued that the prosecutor's questions on cross-examination, regarding the defendant's failure to tell the same story at the time of his arrest as he was telling at trial, violated the rule announced in *Doyle.* The Supreme Court disagreed, however, stating that "*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent." *Id.* 447 U.S. at 408, 100 S.Ct. at 2182. The Court found such line of questioning proper because it was designed to elicit an explanation for a prior inconsistent statement rather than to draw inferences from

Well, you could see in his answers that that had been contrived between him and Mr. Pfeffer, the investigator, because all the other important stuff, he had written down in his notes and he pulled those dates out and said, "This happened on that day." Well, That El Senor and Slick Eddie and things pertaining to the Vega brothers in there, were planted there by this mysterious Mr. Pfeffer or whoever he is.

*Id.* at 1342.

4. The issue in *Doyle* was whether a prosecutor may seek to impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest.

silence. *Id.* at 409, 100 S.Ct. at 2182–83. In conclusion, the Supreme Court stated: "Each of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But *Doyle* does not require any such formalistic understanding of 'silence,' and we find no reason to adopt such a view in this case." *Id.*

In *United States v. Canterbury,* 985 F.2d 483 (10th Cir.1993), relied on by defendant-appellant, this Court recognized the principle that while due process forbids comment on a defendant's post-arrest, post-*Miranda* silence, a prosecutor may impeach a defendant's trial testimony with prior inconsistent statements. *Id.* at 486. However, application of the *Doyle* and *Anderson* principles was complicated by the fact that Canterbury did not remain totally silent, but instead made several statements to the police after receiving *Miranda* warnings. As stated in *Canterbury,* we have previously recognized that when a defendant is "partially silent" by answering some questions and refusing to answer others, this partial silence does not preclude him from claiming a violation of his due process rights under *Doyle. Id.* (citing *United States v. Harrold,* 796 F.2d 1275, 1279 n. 3 (10th Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987)). In *Canterbury* we determined that the appropriate inquiry in these situations is whether the cross-examination was designed to impeach the defendant's trial testimony by calling attention to prior inconsistent statements or, instead, was designed to suggest an inference of guilt from the defendant's post-arrest silence. *Id.*

In *United States v. Mora,* 845 F.2d 233 (10th Cir.1988), we recognized that the test

for determining if there has been an impermissible

> comment on a defendant's right to remain silent at the time of his arrest is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment" on the defendant's right to remain silent.... The court must look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact on the jury.

*Id.* at 235 (quoting *United States v. Morales–Quinones,* 812 F.2d 604 (10th Cir.1987)) (citation omitted). Viewing the prosecutor's comments in context, we conclude that they were not "manifestly intended" to be a comment on defendant-appellant's "partial silence" nor would the jury "naturally and necessarily" take them as such. Rather, the focus of the prosecutor's comments was not on May's failure to present his exculpatory story at the time of arrest, but on prior inconsistent stories as in *Anderson v. Charles, supra.* Because the prosecutor's comments were designed to call attention to prior inconsistent statements, such comments do not constitute a violation of May's due process rights under *Doyle.*

## II

### Validity of "Cost of Imprisonment" Fine

■ Pursuant to United States Sentencing Guidelines § 5E1.2(i),[5] the district court imposed an "additional fine" based on the costs of May's imprisonment and supervised release. Defendant-appellant argues that this additional fine is invalid for two reasons: (1) it serves none of the purposes of punishment set forth at the time of the offense in the Sentencing Reform Act and therefore lacks statutory authorization;[6] and (2) it is uncon-

---

5. Section 5E1.2(i) provides: "Notwithstanding of the provisions of subsection (c) of this section, but subject to the provisions of subsection (f) herein, the court shall impose an additional fine amount that is at least sufficient to pay the costs to the government of any imprisonment, probation, or supervised release ordered." Federal Sentencing Guidelines Manual (1994).

6. These purposes are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the of-

fense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C.A. § 3553(a)(2) (1985 & Supp.1991). In addition, Congress provided another six (seven in the case of an organizational defendant) considerations for the court's determination of a fine amount: (i) the defendant's finances; (ii) hardship to dependents; (iii) pecuniary loss to vic-

stitutional under the Due Process Clause for being irrationally tied to a government expense that fine money cannot by law be used to offset. Brief for Appellant at 38.

In support of his argument, defendant-appellant relies primarily on *United States v. Spiropoulos,* 976 F.2d 155 (3rd Cir.1992), in which the Third Circuit Court of Appeals struck down this provision of the sentencing guidelines on the ground that Congress has not yet authorized such a penalty. The *Spiropoulos* court interpreted the guideline as contemplating the payment of the fine for the sole purpose of compensating the government for the costs of imprisonment and not for victim restitution. *Id.* at 166. The court concluded that such a purpose is inconsistent with the Sentencing Reform Act, rendering § 5E1.2(i) invalid. *Id.* at 167. In evaluating the constitutionality of the guideline, the *Spiropoulos* court refused to consider the governmental purpose of recouping the costs of imprisonment since it found that such a purpose is not expressed in 18 U.S.C. § 3553 or 18 U.S.C. § 3572 of the Sentencing Reform Act. *Id.* at 168. The Third Circuit Court of Appeals further disagreed with the argument that the guideline is a rational means of calculating restitution for the reason that "the cost of imprisoning a defendant has little, if anything, to do with the amount that that defendant has harmed his or her victim(s), and is therefore questionable as an appropriate method of restitution." *Id.*

The *Spiropoulos* holding conflicts with the holdings in other circuits, however. As the third circuit opinion recognized, its holding is in direct conflict with the reasoning of *United States v. Hagmann,* 950 F.2d 175 (5th Cir.1991), in which the defendant-appellant also argued that the guideline is contrary to the Sentencing Reform Act's mandate that the guidelines be consistent with the purposes of sentencing set forth at 18 U.S.C. §§ 3553(a)(2) and 3572(a). In *Hagmann,* the Fifth Circuit Court of Appeals rejected the argument that it was irrational for the Sentencing Commission to develop a guideline that uses the government's cost for incarcer-

ating or supervising a convicted criminal as part of the calculation to determine that criminal's fine. *Id.* at 187. The *Hagmann* court reasoned:

> Once convicted, criminals impose a dual financial cost upon society—both the price of their imprisonment and the expense of trying to alleviate some of the personal cost inflicted upon their victims. Criminals' terms of imprisonment generally reflect, among other things, the seriousness of their crimes and the harm they have inflicted upon their victims. We find, therefore, that the uniform practice of fining criminals on the basis of their individualistic terms of imprisonment—an indicator of the actual harm each has inflicted upon society—is a rational means to assist the victims of crime collectively.

██ Likewise, the *Spiropoulos* court noted that its holding may also conflict with this Court's holding in *United States v. Doyan,* 909 F.2d 412 (10th Cir.1990). Although the argument in *Doyan* was based on an equal protection challenge rather than due process, this Court was ultimately required to decide the same issue: "whether requiring such reimbursement from a convicted felon for the costs of his incarceration bears some rational relationship to a legitimate state purpose." *Id.* at 416; *and see Spiropoulos,* 976 F.2d at 168 n. 13. In *Doyan,* a panel of this Court concluded, "Whether the purpose of the contested fine is to punish, deter, or to spare the taxpayers a substantial expense that has been generated by an intentional criminal act, we cannot say that Guideline § 5E1.2(i) as applied here bears no rational relation to the legitimate governmental interest in criminal justice." *Doyan,* 909 F.2d at 416. In accordance with our decision in *Doyan* and the decision in *Hagmann,* we find that the sentencing guideline is rationally related to a legitimate governmental purpose.

In *United States v. Turner,* 998 F.2d 534 (7th Cir.1993), the Seventh Circuit Court of Appeals specifically criticized the holding in *Spiropoulos.* The seventh circuit rejected the third circuit's conclusion (which was

tims; (iv) restitution, (v) deprivation of illegal gains; and (vi) the ability to pass on the cost of

any fine. 18 U.S.C.A. § 3572(a) (Supp.1991).

based on the reasoning that measuring a fine by the costs of confinement does not reflect any of the statutory objectives of sentencing) that the Sentencing Commission exceeded its authority in promulgating § 5E1.2(i). The *Turner* court noted that Congress told the Commission to consider "the deterrent effect a particular sentence may have on the commission of the offense by others." 28 U.S.C. § 994(c)(6). Also, district courts are advised to impose sentences that "reflect the seriousness of the offense" and "afford adequate deterrence to criminal conduct." 18 U.S.C. §§ 3553(a)(2)(A) and (B). The seventh circuit court reasoned that because the guidelines provide for longer sentences as the harm caused by the offense rises, the costs of confinement rise with the seriousness of the crime; and a fine based on these costs therefore reflects the seriousness of the offense. *Turner*, 998 F.2d at 536. "The system of penalties under the Guidelines is constructed on the belief that higher fines, and longer sentences of imprisonment, are more effective deterrents.... Guideline 5E1.2(i) increases the fines imposed on defendants, and therefore increases deterrence." *Id.*

> Nothing more is necessary to show that the Commission acted within its statutory authority. And despite the third circuit's qualms, 976 F.2d at 167, the rationality of the approach cannot be doubted. The costs of incarceration do not precisely reflect social loss and deterrence, to be sure, but the Constitution does not require a close match between the gravity of the offense and the penalty meted out.

*Id.*

Likewise, the second circuit rejected the contention that the Sentencing Commission exceeded the scope of its statutory authority by promulgating § 5E1.2(i). In *United States v. Leonard*, 37 F.3d 32 (2nd Cir.1994), the Second Circuit Court of Appeals noted the existence of a split in the circuits as to the validity of § 5E1.2(i), citing to *United States v. Spiropoulos, supra,* and *United States v. Turner, supra,* ultimately agreeing with the reasoning and result reached by the seventh circuit in *Turner. Id.* at 39. In adopting the seventh circuit's analysis, the *Leonard* court stated,

> The Third Circuit's ruling unnecessarily restricts the guideline to serving as a recoupment measure without exploring its functional role within the sentencing scheme.... [W]e think it appropriate to evaluate the guideline in the context of the guidelines as a whole and the criminal justice theories on which they were constructed. In doing so, we conclude the Sentencing Commission's promulgation of § 5E1.2(i) to have been a proper exercise of its authority to formulate sentencing guidelines that account for the seriousness of a defendant's offense and the deterrence his sentence may have on others.

*Id.* at 40. The second circuit also rejected the argument that imposition of a § 5E1.2(i) fine contravenes the language in 18 U.S.C. § 3553(a) that criminal sentences imposed under the guidelines must be "sufficient, but not greater than necessary, to comply" with the purposes of the Sentencing Reform Act. Like the defendant-appellant in this case, the defendants in *Leonard* contended that imposition of a fine in accordance with the "fine table" fully satisfies the purposes of the Act; therefore, the additional fine under § 5E1.2(i) is greater than necessary. However, the second circuit court concluded that nothing in the Act indicates that the boundary of a "sufficient" fine is set by the fine table in § 5E1.2(c). *Id. See also Hagmann,* 950 F.2d at 186 (rejecting argument that the purposes set forth at § 3553(a)(2) are wholly realized by the fine table and therefore the § 5E1.2(i) addition to that sum renders the overall fine excessive).

We disagree with defendant-appellant's contention that § 5E1.2(i) is invalid because it lacks statutory authorization. In accordance with the reasoning and result reached by the seventh and second circuits, we conclude that the fine provided for under USSG § 5E1.2(i) appropriately accounts for the seriousness of the offense and the deterrent effect a defendant's sentence may have on others and is not greater than necessary to comply with the purposes of the Act.

## III

### Validity of Additional Fine Imposed

 The fine imposed upon the defendant-appellant was comprised of $12,500.00 to be paid either in a lump sum or in installments as determined by the probation officer. Brief for Appellant, Addendum A at 64. At sentencing, the district judge further stated:

> In addition, by way of an additional fine, I am going to impose on you the cost of your imprisonment and supervised release. At the moment, as the probation officer says, the monthly cost of imprisonment is $1,492.00. The monthly cost for supervision is $115.33. Whatever it is, you're to pay it, because I think you can pay your own way and the taxpayers are not going to be supporting you in prison, nor are they going to be supporting you on supervised release.

*Id.* at 64–65. Defendant-appellant contends that the district court's comments that the monthly amounts were correct only "at the moment" and particularly that Mr. May was to pay the amount "whatever it is" make the additional fine "incurably ambiguous" on the record. Brief for Appellant at 34.

 We have previously stated that a sentence which is internally ambiguous to the point that a reasonable person cannot determine what the sentence is may be found illegal; however, not all ambiguous sentences are illegal sentences. *United States v. Earley,* 816 F.2d 1428, 1430–31 (10th Cir.1987) (en banc). Most sentencing ambiguities can be resolved by reviewing the record to ascertain the intent of the sentencing judge and identify the terms of the sentence. *Id.* at 1431. We have previously established the rule that "[w]hen an orally pronounced sentence is ambiguous, ... the judgment and commitment order is evidence which may be used to determine the intended sentence." *United States v. Villano,* 816 F.2d 1448, 1451 (10th Cir.1987) (citing *Baca v. United States,* 383 F.2d 154, 157 (10th Cir.1967), *cert. denied,* 390 U.S. 929, 88 S.Ct. 868, 19 L.Ed.2d 994 (1968)); *see also Earley,* 816 F.2d at 1431. As we recognized in *Villano,* the purpose of the written order is to help clarify an ambiguous oral sentence by providing evidence of what was said from the bench. *Villano,* 816 F.2d at 1451.

There is some ambiguity in the district judge's oral pronouncement as to the amount of the additional fine imposed on defendant-appellant. Unfortunately, however, neither the written memorandum of sentencing hearing filed on September 12, 1992, nor the written Judgment filed September 14, 1992 reflecting the sentence, aid in clarifying the amount of the additional fine. *See* Brief for Appellant Addendum B and C. In fact, the written Judgment further confuses the matter as it incorrectly provides that the $12,500.00 fine "includes any costs of incarceration and/or supervision" and makes payment of the fine and costs merely a condition of supervised release. Brief of Appellant Addendum C at 3–4.

Accordingly, that portion of defendant-appellant's sentence which imposes an additional fine pursuant to USSG § 5E1.2(i) is vacated and the matter is remanded to the district court for resentencing, at which time the district court is directed to impose any "additional fine" with specificity as to the costs of imprisonment and supervised release.

## IV

### Conclusion

The guilty verdict against the defendant-appellant and the district court's decision to impose an "additional fine" pursuant to § 5E1.2(i) are affirmed. We vacate and remand, however, for clarification of the amount of the "additional fine" consistent with this opinion.