FILED
United States Court of Appeals
Tenth Circuit

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

December 5, 2024

Christopher M. Wolpert
Clerk of Court

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ROBERT WILLIAM PERRY, II,

    Defendant-Appellant.

No. 23-5025
(D.C. No. 4:20-CR-00218-JZ-1)
(N.D. Okla.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **PHILLIPS**, **CARSON**, and **FEDERICO**, Circuit Judges.

_____

Closing statements are counsels' last opportunity to present their case to the jury, remind jurors of the relevant law as outlined in the instructions, and suggest inferences they hope jurors will draw from the facts. Because they offer perhaps the best chance to persuade the jury, closing arguments cannot include rhetoric that persuades jurors to depart from jury instructions and reasoned judgment. But a closing argument exemplifies the art of persuasion. So we are cautious about imposing too stringent restrictions.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Here, Defendant Robert Perry—tried for aggravated sexual abuse of a child—argues the prosecutors called him an "abuser," implied he had a motive to lie, vouched for the alleged victim when he stated "kids don't make this up," used evidence outside the record when they said that the facts underlying the alleged victim's abuse were "too common," and committed prosecutorial misconduct by stating that "justice demands" a guilty verdict.  Defendant contends that the prosecutors' words require a new trial.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court.

## I.

Defendant met his wife, A.A., in high school.  They married, and Defendant helped raise A.A.'s daughter from a prior relationship, L.A. When L.A. entered first grade, however, Defendant allegedly made her perform oral sex acts on him four to five times a week.  He told her not to tell anyone, but eventually L.A. told a classmate the secret.  A teacher overheard conversation amongst classmates and told school administrators.  The teacher urged school administrators to act, but after interviewing four of L.A.'s classmates, they refused.  Undeterred, the teacher asked L.A. to write down what happened to her.  L.A. wrote that "my dad lets me suck on his privts then wen im done he rewrords me."

An Oklahoma Department of Human Services agent interviewed L.A. at school.  She appeared "happy" and "very talkative," but disclosed her abuse to the agent.  The agent scheduled a forensic interview with L.A.  When the forensic interviewer asked L.A. about "inappropriate touches," she withdrew and responded

2

that she did not want to talk about it.  A subsequent interview at the forensic interviewer's office and a pediatric sexual assault examination both supported the note L.A. wrote for her teacher.

Defendant denied the abuse in an interview with police, and argued that L.A. pieced together her story from isolated experiences with sexually explicit material and acts she saw in the household.[1]  Though A.A. initially did not believe her daughter's claims, she came around when the police detective revealed that L.A. described the taste, smell, and consistency of ejaculate to him.  A federal jury indicted Defendant, who elected to go to trial.[2]

The various investigators and school staff involved in L.A.'s case testified at trial, as well as a fact-blind expert witness on how sexually assaulted children generally communicate their abuse.  The government presented no physical evidence of sexual abuse, but both Defendant and L.A. testified.  L.A. described both the consistency and taste of ejaculate, as well as the conduct she alleged Defendant performed on her; defense counsel, conversely, repeatedly maintained euphemistically that Defendant "didn't do this"—a recurring theme throughout trial.

---

[1] Defendant said that L.A. had been "exposed . . . to sexual topics with . . . music and . . . conversations," and that "L.A. had accidentally seen pornography on [Defendant's] phone."

[2] An Oklahoma state jury found Defendant guilty of six counts of sexually abusing a child under twelve, but the Supreme Court vacated the conviction because of <u>McGirt v. Oklahoma</u>, 591 U.S. 894 (2020).

The prosecutors focused on L.A.'s believability in their closing argument.[3] One argued:

> Kids don't make this up, folks.  They just don't.  No one should know what [ejaculate] tastes like.  As [L.A.] told you "it tastes like pee … well, actually I don't know what pee tastes like but it tastes like pee smells."  Kids don't make that up.  They have to learn it from somewhere.  They don't know the shape of their father's penis, brown and like a balloon animal blowed [sic] up.  They don't know about moving their head up and down and their hand in a circle doing circle things.

He also said that, had L.A.'s teacher not asked her to write out what happened to her, she would have "continue[d] to go back to her abuser."

Defense counsel responded in her closing statement that L.A. and multiple witnesses lied in their testimony, and repeated that Defendant "did not do this." Defense counsel focused on the government's expert witness specifically.  She argued that, despite the government's expert claiming to be a blind witness with no knowledge of the facts of this case, the witness's examples on how victims generally communicate their abuse were "too perfect" for this to be the case.  The other prosecutor reiterated in rebuttal that "kids don't make this stuff up," reminding the jurors that "[o]nly one person benefits from lying here this week".  As for defense counsel's allegations about the prosecution's expert witness, the prosecutor responded that the closeness of the examples to L.A.'s case was an unfortunate coincidence because the elements of L.A.'s case were "too common" among children subject to sexual abuse.  She concluded by contending that "all of the evidence in this

---

[3] Two prosecutors argued this case during closing: Mr. Alex Scott and Ms. Valerie Luster.  Mr. Scott handled the initial closing argument while Ms. Luster did the rebuttal.

4

case leads up to one word.  That one word is supported by the evidence in this case and it is the word that justice demands.  Guilty."  Defense counsel did not object during the prosecution's closing statement or its rebuttal.

The jury convicted Defendant.  He moved for a new trial, claiming that several statements the prosecutors used at trial improperly influenced the jury.  The judge denied that motion and sentenced Defendant to life imprisonment.

## II.

We review for plain error because Defendant did not object to the errors he claims occurred during closing argument.  To succeed under this standard, Defendant must show "(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Starks, 34 F.4th 1142, 1157 (10th Cir. 2022) (quoting United States v. Portillo-Vega, 478 F.3d 1194, 1202 (10th Cir. 2007)).  A district court plainly errs only if it does so "clear[ly] or obvious[ly] under current law," while a plain error affects substantial rights only if the record evinces "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different."  United States v. Woods, 764 F.3d 1242, 1245 (10th Cir. 2014) (quoting United States v. Rosales–Miranda, 755 F.3d 1253, 1258 (10th Cir. 2014)).

## III.

Defendant argues that the prosecutors committed plain error by vouching for L.A. when they stated that "kids don't make this stuff up" and that L.A.'s testimony and the events it described represented a situation "too common" among sexual abuse

victims. Defendant contends also the prosecutors erred by implying that Defendant's testimony was false when they said "[o]nly one person benefits from lying here this week," stating that Defendant was an "abuser," and exhorting the jury to do what "justice demands" by convicting Defendant. We disagree.

## A.

Defendant argues that the prosecutors improperly vouched for L.A.'s testimony by stating repeatedly that "kids don't make this up." Defendant claims that these words reference evidence not in the record—a "gross generalization" about the typical habits of children—to improperly support L.A.'s testimony. This declaration, Defendant contends, is "the equivalent of highly charged statements like 'believe the children' or 'believe the victims,' which assert that the jurors should believe L.A. here simply because kids would not make things up." As the credibility of L.A.'s testimony was a particularly important part of the prosecution's case the jury had to weigh, Defendant argues that the prosecutors inappropriately influenced the jury to consider the credibility of children generally rather than L.A. herself.

Prosecutors cannot vouch for the credibility of the witnesses they present to the jury by "implicitly indicating that information not presented to the jury supports the witness' testimony." United States v. Franklin-El, 555 F.3d 1115, 1125 (10th Cir. 2009) (quoting United States v. Magallanez, 408 F.3d 672, 680 (10th Cir. 2005)). Such comments "usurp the exclusive function of the jury to weigh the evidence and determine credibility." United States v. Hill, 749 F.3d 1250, 1263 (10th Cir. 2014) (quoting United States v. Samara, 643 F.2d 701, 705 (10th Cir.

6

1981)).  In analyzing whether prosecutorial conduct requires reversal, we ask

(1) "whether 'the prosecutor's statements were improper'" and (2) whether the

impropriety was "harmless" because it did not prejudice the defendant.  United States

v. Fleming, 667 F.3d 1098, 1103 (10th Cir. 2011) (quoting United States v. Irvin, 656

F.3d 1151, 1171 (10th Cir. 2011)).

The prosecutors here did not vouch for L.A.'s testimony.  We have observed

that "in the American tradition a closing argument can be a quintessential example of

the art of persuasion," and because of that tradition "courts should be cautious about

imposing too stringent restrictions."  United States v. Gregory, 54 F.4th 1183, 1210

(10th Cir. 2022); Whittenburg v. Werner Enters. Inc., 561 F.3d 1122, 1128 (10th Cir.

2009) ("our job is not to grade closing arguments, but . . . to police the outer

boundaries of permissible argument.").  In context, the prosecutors' comments are

acceptable rhetoric.  Immediately after one prosecutor said that "kids don't make this

up," he quoted the section from L.A.'s testimony in which she described the taste of

ejaculate.  When next he used the phrase, he said it immediately before citing the

section in which L.A. described what she did to Defendant's penis.  And when the

other prosecutor mentioned it in her rebuttal, she did so to respond to defense

counsel's closing argument, in which counsel stated that the witnesses against

Defendant, including L.A., were lying.  The statement "kids don't make this stuff up"

only asked the jurors to rely on their general knowledge of children's inability to

describe elicit sexual acts and the detail with which L.A. described her own.

Statements and phrases like "believe the children" are dissimilar. "[B]elieve the children" and "believe the victim" appeal inappropriately to jurors' sympathies for particular groups, which contradicts the jury's role as a neutral factfinding body analyzing only the evidence presented. Hill, 749 F.3d at 1263 (emphasizing the jury's independence from others' opinions on witness credibility in making its own decisions). Prosecutors may "fairly comment on the evidence" to a jury and ask that the jurors use both their common sense and general knowledge. United States v. Orr, 692 F.3d 1079, 1097 (10th Cir. 2012) (citing United States v. Hartsfield, 976 F.2d 1349, 1354–55 (10th Cir. 1992)). That is exactly what the prosecutors did here.

                                             B.

Defendant next argues that the prosecutors further vouched for L.A.'s credibility when one said that the facts of L.A.'s case were "too common." By referencing child sexual abuse in the community, Defendant warns, the prosecutors "attempt[ed] to saddle [Defendant] with the burden of a larger societal problem" and "scapegoat" him for it. The prosecutors "implie[d] the jury should hold Perry accountable for society's problem" and reach beyond Defendant's individual guilt in so doing.

Again, we disagree. The prosecutor's comment was, in full:

> I submit to you that [the expert witness's examples] are not too perfect, they are too common. It is too common that kids have to tell their friends about sexual abuse because their friends are their trusted person. It is too common that those disclosures happen at school and it is too common that they have to deal with the entire school staff to get to someone who will help them.

8

She made this argument in rebuttal to defense counsel's argument that the jury should infer the expert witness lied about her lack of knowledge of the case's facts because the examples she used to illustrate how children generally respond to and communicate about sexual abuse were "too perfect" for that to be true. By matching defense counsel's claim that the likeness between the examples and L.A.'s testimony was "too perfect" with her own observation that the facts that underlie L.A.'s case were "too common," the prosecutor suggested that L.A.'s case had much in common with the typical child sexual abuse case. The jury could reasonably have inferred that the fact-blind witness did not lie.

C.

Defendant combines two of the prosecutors' comments in his next plain-error allegation. Referencing our case law stating that prosecutors must refrain from "unnecessary" and "unwarranted" language during closing arguments that prejudices the defendant, United States v. Kravchuk, 335 F.3d 1147, 1154 (10th Cir. 2003) (quoting United States v. Nichols, 21 F.3d 1016, 1019 (10th Cir. 1994)), Defendant contends that one prosecutor acted prejudicially when he called Defendant an "abuser" and the other did so when she said that Defendant was the "only one [who] benefits from lying here this week." Defendant characterizes both as "foul blow[s]" made more egregious because the prosecution said immediately after that "[r]eally the only person that matters for you today is [L.A.]. [L.A.] told you all you need to know. The consistency of all of her disclosures is the ultimate reason why you can

9

believe her."  Defendant argues that the prosecutors again vouched for Plaintiff in making these supplementary comments.

The prosecutors' comments are not plain error.  As with the other parts of the prosecutor's closing argument, the context matters.  Prosecutors may imply that witnesses and even defendants lied if they connect their insinuation to evidence presented to the jury.  United States v. May, 52 F.3d 885, 887–89 (10th Cir. 1995) (holding that prosecutor's suggestion that the defendant provided false testimony on the advice of his counsel was not reversible plain error); United States v. Robinson, 978 F.2d 1554, 1567 (10th Cir. 1992) (stating that although "a prosecutor would be well advised to avoid directly accusing a defendant of lying[,] . . . we are confident that the statements in this case would have been perceived only as commentary on the implausibility of the defendant's story" given the evidence presented) (quoting United States v. Garcia, 818 F.2d 136, 143–44 (1st Cir. 1987)).

The prosecutors did not violate this principle.  They implied that Defendant falsely testified in rebuttal after a lengthy exposition during which they both urged the jury to use its "common sense" and reject what they deemed outlandish implications from defense counsel's closing argument that multiple witnesses for the government lied:

> They want you to believe that this seven-year-old not only successfully fooled all of the adults in her life but maintained that over four years. At the same time, though, one of the other alternative hypothesis is that she had some ideas floating around in her head and the adults in her life, various adults, none of which really worked together, took those ideas and made them into this gigantic weed that brings us here today. Those are your alternative hypotheses and those are preposterous.

10

They argued the evidence supported an inference that Defendant lied instead.  In this context, implying that Defendant had a motive to lie and arguing that L.A.'s testimony was more believable was neither prejudicial conduct nor improper vouching because both arguments appealed to the credibility of each witness's testimony given the evidence presented.  We have upheld conduct almost identical to these prosecutors' in other cases against plain-error challenges.  Franklin-El, 555 F.3d at 1125–26 (holding that a prosecutor's suggestion that his own witness had no motive to lie while the defendant did was neither vouching nor plain error).

As for the allegation that one prosecutor called Defendant an abuser, the record is not as clear as Defendant suggests.  Discussing the teacher that reported L.A.'s alleged abuse and the forensic interviewer that later talked to L.A. to remind the jury of their testimony, the prosecutor said "[the teacher] and [the forensic interviewer] cared about the safety of [L.A.].  And thank goodness for Brandy Roberts pressing the issue on Monday because as Principal Carpenter told you, without this note, [L.A.] was going to continue to go back to her abuser."  Notably, he never called Defendant an abuser by name, nor did he arguably even imply that Defendant abused L.A.  He said, instead, that L.A.'s teacher fortuitously discovered that L.A. suffered sexual abuse, and that the abuse would have continued had she not reported it.  The prosecutor fairly commented on the evidence, and, if this was error at all, it was not so plain as to warrant reversal.

D.

Finally, Defendant contends that the prosecutors plainly erred when they suggested that "justice demands" a guilty verdict. Defendant relies on our case law stating that a prosecutor cannot suggest that a jury has a civic duty to convict, Bland v. Sirmons, 459 F.3d 999, 1027 (10th Cir. 2006) (citing Thornburg v. Mullin, 422 F.3d 1113, 1134 (10th Cir. 2005)), because such comments are "offensive to the dignity and good order with which all proceedings in court should be conducted," Viereck v. United States, 318 U.S. 236, 248 (1943). What "justice demands," Defendant maintains, "is that jurors . . . render a decision based only on the evidence properly admitted in the case," and the prosecutors' comments suggested otherwise. Defendant argues the prosecutors' exhortations are especially erroneous because their appeal to justice "was the last argument the jurors heard before retiring to deliberate."

Defendant misreads our precedents. Prosecutors may argue that the evidence they presented suggests that a guilty verdict would serve justice under the law. They commit prosecutorial misconduct only when they stray from the facts of the case in so doing. In Simpson v. Carpenter, for example, a prosecutor committed misconduct when he said that justice "demands you to do the most difficult thing you have to do in fulfilling your civic duty as a juror" by using the death penalty, followed by an emotional appeal to the "carnage that th[e] Defendant ha[d] left behind." 912 F.3d 542, 588 (10th Cir. 2018). Though the prosecutor erred, we did not reverse because the comment alone did not make the trial fundamentally unfair. Id.; see also

12

Thornburg, 422 F.3d at 1133–34 (holding a prosecutor's comments about the jury's role in allowing "justice [to] prevail" appropriate because a nexus existed between the references to justice and the evidence).

The prosecutor appealed to justice in this case only after a lengthy closing statement reviewing all the relevant evidence. Concluding, she said "[y]ou heard that little girl talk about horrific things the defendant did to her. All of the evidence in this case leads up to one word. That one word is supported by the evidence in this case and it is the word that justice demands. Guilty." Even in this statement, the prosecutor appealed to justice to argue only that the evidence presented warranted a conviction. The nexus the prosecutor drew between the evidence and her appeal to justice ameliorates any hazard the words "justice demands" might have caused. [4]

AFFIRMED.

Entered for the Court


Joel M. Carson III
Circuit Judge

---

[4] As we hold that none of the prosecutors' comments were plain error, we need not address Defendant's argument that the alleged errors "unfairly tipped the balance and deprived him of his right to a fair trial."