**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 6, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

### UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

UNITED STATES OF AMERICA

    Plaintiff - Appellee,

v.

    No. 23-7088

KEVIN RAY WARD,

    Defendant - Appellant.

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA
(D.C. No. 6:21-CR-00208-PRW-1)**

_____

Hunter Haney, Deputy Federal Public Defender (Cuauhtemoc Ortega, Federal Public Defender, with him on the briefs), Los Angeles, California, for Defendant-Appellant.

Benjamin D. Traster, Assistant United States Attorney (Christopher J. Wilson, United States Attorney, with him on the briefs), Eastern District of Oklahoma, Muskogee, Oklahoma, for Plaintiff-Appellee.

_____

Before **HOLMES**, Chief Judge, **SEYMOUR** and **BACHARACH**, Circuit Judges.

_____

**BACHARACH**, Circuit Judge.

_____

    This case involves a criminal defendant's constitutional protection from the government's use of post-arrest silence. Upon making arrests,

law-enforcement officers must tell suspects that (1) they can stay silent and (2) whatever they say can be used against them. *Miranda v. Arizona*, 384 U.S. 436, 467–69 (1966). But what happens when suspects are only partially silent, talking about some things and not others? Can the government use the partial silence against these suspects after telling them that they can remain silent? We answer *no*, concluding that this use of partial silence violates the due process right to a fair trial.

### 1.    Mr. Ward testifies that he was forced to participate in the attack.

This case stemmed from a violent attack on three men as they returned from a fishing trip in Indian Country. The defendant, Mr. Kevin Ray Ward, admitted after his arrest that he had participated in the attack with Mr. Anthony Juan Armenta. At trial, however, Mr. Ward attributed his participation to fears for his own safety because of threats from Mr. Armenta.

The prosecutor cross-examined Mr. Ward about his failure to mention these threats when questioned after the arrest:

> Q.    Do you recall that you gave a statement to the police in this case on May 26th of 2020?
>
> A.    Yes.
>
> Q.    That would have been just two days after this incident?
>
> A.    Yes.
>
> Q.    Okay. Armenta wasn't in that interview with you, was he?

A.    No.

Q.    It was just you by yourself?

A.    Yes.

Q.    With law enforcement?

A.    Yes.

Q.    And you admitted to some of the things you've said on direct; that you were at the river that day, that you had a .45, and that you had shot. Do you remember that?

A.    Yes.

Q.    You never one time say to [the detective] that you were under duress, do you?

A.    No.

Q.    You don't say "I was afraid of Armenta, so I got in the car"?

A.    No.

Q.    You don't say "my family was in danger if I didn't do this"?

A.    No, I did not say that.

R. vol. 3, at 694–95.

In closing argument, the prosecutor reminded the jury about

Mr. Ward's failure to mention the threats when questioned after the arrest:

And when Kevin Ward was talking with [the detective], do you know what he didn't tell him? No details about? The duress. Not a single detail about duress. Nothing about Mr. Armenta's duress.

3

> He was alone with [the detective], maybe another police officer, but Armenta wasn't there. That was his chance. This guy's got me under his spell. Not a word. That was his chance. Why not? He didn't say anything because it's not true.
>
> And then we have Ward's testimony two years later. And what is he testifying about? Duress. He's on trial. It is a brand-new story told for the very first time, and it magically absolves him of criminal responsibility.

*Id.* at 794–95.

After the closing arguments, Mr. Ward was convicted on charges of

- assault resulting in serious bodily injury in Indian Country (18 U.S.C. §§ 2, 113(a)(6), 1151, 1153),

- assault with a dangerous weapon with an intent to do bodily harm in Indian Country (18 U.S.C. §§ 2, 113(a)(3), 1151, 1153), and

- use, carrying, brandishing, and discharge of a firearm during and in relation to a crime of violence (18 U.S.C. §§ 2, 924(c)(1)(A)(i), (ii), (iii)).

**2.　We review for plain error.**

On appeal, Mr. Ward argues that he was denied due process when the district court allowed the government to use his post-arrest silence. Mr. Ward didn't make this argument in district court, so he must satisfy the plain-error standard. *United States v. Kee*, 129 F.4th 1249, 1252 (10th Cir. 2025). Under this standard, Mr. Ward must satisfy four elements:

1.　The district court committed an error.

2.　The error is clear or obvious under current law.

3.　The error affected a substantial right.

4

4.    The error seriously affected the fairness, integrity, or public reputation of judicial proceedings.

*Id.*; *United States v. Griffith*, 65 F.4th 1216, 1218 (10th Cir. 2023), *cert. denied*, ___ U.S. ___, 144 S. Ct. 1066 (2024).

**3.    Mr. Ward has satisfied the first and second elements.**

We consider the first and second elements together. For the second element, an error is *plain* if it is "clear or obvious," which means "contrary to well-settled law." *United States v. Garcia*, 946 F.3d 1191, 1202 (10th Cir. 2020). "In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." *United States v. Ruiz-Gea*, 340 F.3d 1181, 1187 (10th Cir. 2003).

Mr. Ward's claim rests on *Doyle v. Ohio*, where the Supreme Court said that it's fundamentally unfair for prosecutors to use post-arrest silence against defendants who had been told that they could remain silent. 426 U.S. 610, 619 (1976). But what if a defendant engages in *partial silence*, talking to law-enforcement officers after an arrest but deciding to stay silent on particular matters?

We addressed this situation in *United States v. Canterbury*, 985 F.2d 483 (10th Cir. 1993), when a defendant claimed entrapment as a defense to unregistered possession of a firearm (a silencer). *Id.* at 484–85. There officers questioned the defendant after he had been arrested. In response, the defendant admitted that he had bought a silencer; but he didn't say

anything about entrapment. *Id.* at 484, 486. At trial, however, the defendant asserted a defense of entrapment. *Id.* at 985.

To counter this defense, the prosecutor questioned the defendant about his failure to mention entrapment when he furnished details after the arrest. *Id.* at 485. We concluded that this questioning had violated *Doyle*: "The questions were not designed to point out inconsistencies between [the defendant's] trial testimony and his statements at the time of arrest . . . . The inference suggested by the line of questioning is that [the defendant] was guilty because an innocent person would have presented the [entrapment] theory to the arresting officers." *Id.* at 486.

The same situation exists here. The prosecutor

- questioned Mr. Ward about his failure to tell law-enforcement officers about the threats and

- argued in closing that this omission suggested that Mr. Ward had lied at trial.

But when Mr. Ward had been arrested, he was told that he had a constitutional right to stay silent. Supp. R. at 2.

Granted, Mr. Ward did tell officials about some aspects of the attack, just as the *Canterbury* defendant had admitted to the purchase of a silencer. R. vol. 3 at 361–62; Gov. Exs. 45–46, 49. But the *Canterbury* defendant's statement about the silencer didn't torpedo his right to stay silent on other matters; and the same is true of Mr. Ward's right to stay silent about the alleged threats.

6

Seeking to distinguish *Canterbury*, the government argues that it used Mr. Ward's prior inconsistent statements rather than his exercise of the constitutional right to remain silent, that the cross-examination was permissible as a challenge to credibility, and that Mr. Ward had waived his right to silence by talking to officers after the arrest. We reject these arguments.

First, the government argues that the prosecutor questioned Mr. Ward about his prior inconsistent statements rather than his post-arrest silence, likening the cross-examination to the questioning in

- *Anderson v. Charles*, 447 U.S. 404 (1980) (per curiam),

- *United States v. May*, 52 F.3d 885 (10th Cir. 1995), and

- *United States v. Toro-Pelaez*, 107 F.3d 819 (10th Cir. 1997).

But these opinions involved questioning about inconsistencies between statements—not the use of post-arrest silence.

In *Anderson v. Charles*, for example, the defendant was charged with first-degree murder. 447 U.S. 404, 404 (1980) (per curiam). At trial, the defendant admitted that he had stolen the victim's car. *Id.* at 404–05. But the parties disagreed on where the car had been when it was stolen. A law-enforcement officer testified that the defendant had said after his arrest that the car was parked on a street. *Id.* at 405. The defendant testified at trial that he had taken the car from a parking lot. *Id.* at 405–06. The prosecutor cross-examined the defendant about the inconsistency, pointing

out that he had chosen not to tell law-enforcement officers the true location of the car. *Id.* at 405–06. The Supreme Court concluded that this cross-examination had been permissible, reasoning that the prosecutor had pointed to the defendant's prior inconsistent statement about the true location of the car—not to his post-arrest silence. *Id.* at 408–09.

Similarly, we concluded in *United States v. May* that a prosecutor's closing argument referred to a prior inconsistent statement rather than post-arrest silence. 52 F.3d 885, 889–90 (10th Cir. 1995). There the defendant admittedly had a substantial quantity of cocaine and was charged with distributing it. *Id.* at 886–87. He told law-enforcement officers that he had loaned money to his girlfriend to buy cocaine and took some of the cocaine as collateral. *Id.* at 887. At trial, however, the defendant testified that he had given money to his girlfriend because he was scared for her. *Id.* After this testimony, the prosecutor argued in closing that the defendant had given inconsistent statements; and we concluded that this argument hadn't entailed a comment on post-arrest silence. *Id.* at 890.

We also rejected a similar claim in *United States v. Toro-Pelaez*, 107 F.3d 819 (10th Cir. 1997). There the defendant drove a vehicle containing $5 million worth of cocaine in a hidden compartment. *Id.* at 823. The main issue was whether the defendant had known about the cocaine. *Id.* On this issue, the prosecutor impeached the defendant with lies that he had told officers after the arrest. *Id.* at 827. We concluded that the district court

8

hadn't plainly erred because the impeachment involved the defendant's prior inconsistent statements rather than his post-arrest silence. *Id.*

The government compares the facts in these cases to what occurred here, contending that the prosecutor just referred to an inconsistency between Mr. Ward's trial testimony and his account when he was arrested. But Mr. Ward's post-arrest silence wasn't inconsistent with anything that he had told the officers.[1] To the contrary, the prosecutor relied on what Mr. Ward *hadn't* said after the arrest. The cross-examination was thus designed "to suggest an inference of guilt from . . . post-arrest silence" rather than to highlight prior inconsistent statements. *United States v. Canterbury*, 985 F.2d 483, 486 (10th Cir. 1993).

Second, the government argues that it didn't violate *Doyle* because

- Mr. Ward testified only about what he had told the officers and

- the prosecutor did nothing more than challenge Mr. Ward's credibility.

---

[1]    The government points to one inconsistency between Mr. Ward's trial testimony and his statements to law-enforcement officers before the trial: After the arrest, he told officers that the victims had shot first. R. vol. 3, at 497. But Mr. Ward admitted at trial that he and Mr. Armenta had fired the first shots. R. vol. 3, at 485–87, 432–33.

Though an inconsistency existed, the prosecutor didn't challenge the truthfulness of Mr. Ward's trial testimony about who had shot first. And in the absence of such a challenge, the government doesn't argue that the post-arrest silence cast doubt on Mr. Ward's admission that he and Mr. Armenta had shot first.

But the constitutional prohibition exists because the use of post-arrest silence is an unfair way to challenge credibility. *See Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986) ("The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony."). In questioning Mr. Ward based on his partial silence, the government unfairly challenged his credibility based on his exercise of the right to remain silent.

Finally, the government contends that Mr. Ward didn't exercise his right to stay silent. But Mr. Ward did what the *Canterbury* defendant had done, telling officers about some aspects and remaining silent about others. *See United States v. Canterbury*, 985 F.2d 483, 485 (10th Cir. 1993) (concluding that "partial silence [did] not preclude [the defendant] from claiming a violation of his due process rights under *Doyle*"); *accord United States v. Garcia-Morales*, 942 F.3d 474, 476 (9th Cir. 2019) ("[A] suspect who remains silent in response to certain questions may still claim protection under *Doyle* even if his silence falls short of the unambiguous declaration required to invoke the right to counsel . . . or the right to cut off questioning . . . ."). So under *Canterbury*, the prosecutor committed an obvious violation of due process by impeaching Mr. Ward with his failure to mention Mr. Armenta's threats.

10

**4.      Mr. Ward has satisfied the third and fourth elements.**

Mr. Ward also argues that the error affected his substantial rights. In just a single sentence, the government contends that the error didn't affect Mr. Ward's substantial rights because the victims had given "consistent and damning testimony." Appellee's Resp. Br. at 18. We disagree.

The three victims did testify about Mr. Ward's violent actions. But Mr. Ward never denied that he had participated in the violent attack; his defense was that he had acted violently because of threats from Mr. Armenta. That defense rested on the credibility of Mr. Ward, not the three victims. And the government attacked Mr. Ward's credibility by lasering in on his failure to tell officers about Mr. Armenta's threats. With Mr. Ward's credibility at the heart of his duress defense, the cross-examination about his post-arrest silence affected his substantial rights. *See United States v. Kee*, 129 F.4th 1249, 1253 (10th Cir. 2025) (concluding that the defendant had established an effect on his substantial rights because "[t]he government's repeated reference to [the defendant's] post-*Miranda* silence [had] served only one purpose—to cause jurors to make a negative inference about [the defendant's] truthfulness based on the mere fact that he asserted his constitutional right"); *see also United States v. Canterbury*, 985 F.2d 483, 487 (10th Cir. 1993) ("By using [the defendant's] post-arrest silence to impeach his testimony, the government attacked the heart of his defense.").

11

For the fourth element, Mr. Ward argues that he has shown that the error affected the fairness, integrity, or public reputation of judicial proceedings. The government doesn't counter that argument. So we conclude that Mr. Ward has made the required showing. *See United States v. Egli*, 13 F.4th 1139, 1146 (10th Cir. 2021) (concluding that the government waives review of particular prongs of the plain-error standard by failing to contest them in the appeal).

* * *

Because Mr. Ward has established plain error, we vacate his convictions and remand for further proceedings consistent with this opinion.[2]

---

[2] Because we vacate Mr. Ward's convictions based on a denial of due process, we need not address his other appellate arguments.

12