FILED
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CHRISTOPHER KEE,

    Defendant - Appellant.

No. 23-2189

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:20-CR-01880-MV-1)**
_____

Dean Sanderford, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado, for Defendant-Appellant.

Emil J. Kiehne, Assistant U.S. Attorney (Alexander M.M. Uballez, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.
_____

Before **HOLMES**, Chief Judge, **SEYMOUR**, and **EBEL**, Circuit Judges.
_____

**SEYMOUR**, Circuit Judge.
_____

Defendant Christopher Kee appeals from his conviction and sentence related to an altercation in April 2020 between Mr. Kee and his then-girlfriend, Candace Chinchillas. At trial, Mr. Kee was convicted of assault with a dangerous weapon in

Indian country. On appeal, he argues that the government plainly violated his due process rights under *Doyle v. Ohio*, 426 U.S. 610 (1976).

For the reasons explicated *infra*, we agree with Mr. Kee. Accordingly, exercising jurisdiction under 28 U.S.C. § 1291, we **vacate** Mr. Kee's conviction and sentence and **remand** for further proceedings consistent with this opinion.

**I**

In early 2019, Mr. Kee met Ms. Chinchillas, a recently divorced mother of three, on Facebook. The two started talking and began a romantic relationship. Mr. Kee and Ms. Chinchillas met in person for the first time in April 2019 when she was living in Phoenix, Arizona with her children. Later in April, however, the two decided to move in together at a home owned by Mr. Kee's mother and stepfather outside of Shiprock, New Mexico. Ms. Chinchillas's children went to live with their father, Ray Chinchillas, in Thoreau, New Mexico.

By all accounts, Mr. Kee and Ms. Chinchillas had a stormy relationship. They both drank excessively and tended to fight when they were drunk. Each accused the other of abusive behavior. Ms. Chinchillas accused Mr. Kee at trial of physical abuse, keeping her prisoner at their home, monitoring her phone, deleting her contacts, and controlling her money. Mr. Kee, on the other hand, said at trial that Ms. Chinchillas was the aggressor and abuser. He testified that she would hit him when she was drinking, hide his panic attack medication, and mimic him when had panic attacks.

Two encounters with police shed light on the nature of this volatile early relationship. In May 2019, just after Mr. Kee and Ms. Chinchillas had moved in

2

together, Shiprock police arrested them both for public intoxication. Later, both Ms. Chinchillas and Mr. Kee reported to the FBI that Shiprock police had dragged Ms. Chinchillas to the bushes during the arrest and raped her with a flashlight. When confronted by the FBI with a video directly disproving their rape claims, they each blamed the other for the false accusations. Ms. Chinchillas, who in June 2020 told one of her children that she did not want to call the police because she had previously been raped by a police officer, claimed that Mr. Kee coerced her into making this false claim. Mr. Kee, on the other hand, claimed that Ms. Chinchillas had told him what to say, and maintained he did not learn she had lied to the FBI about being raped by a Shiprock police officer until during trial preparation in this case.

The other encounter with police, stemming from shortly before the incident that led to Count 1 in this case, began with a motel manager responding to a disturbance outside one of his rooms in October 2019. There he found Mr. Kee, yelling to get into the room so he could retrieve his belongings. The manager persuaded Ms. Chinchillas to open the door, and she started attacking Mr. Kee almost immediately. Ms. Chinchillas only stopped when Mr. Kee pushed her away in self-defense. The manager testified that Mr. Kee seemed to want to get out of the situation, while Ms. Chinchillas wanted it to continue. Ultimately, Ms. Chinchillas was charged and convicted of battery in state court, requiring her to complete a diversion program.

Three incidents, from October 2019, April 2020, and June 2020, resulted in the four counts of assault with a dangerous weapon in Indian country Mr. Kee faced at

trial. Three of the four counts—Counts 1, 3, and 4—involved significant evidence beyond just the testimony of Ms. Chinchillas and Mr. Kee. On those three counts, Mr. Kee was acquitted. Count 2 came down almost entirely to whether the jury believed Ms. Chinchillas or Mr. Kee about what happened. Both agreed that Mr. Kee stabbed Ms. Chinchillas. But while she depicted the stabbing as a savage, drunken attack, Mr. Kee testified that the stabbing was defensive, an effort to stop Ms. Chinchillas from strangling him with nylon lanyards he wore around his neck that held his keys. On this count, and after the government unlawfully used Mr. Kee's post-*Miranda* silence to impeach him on multiple occasions, the jury convicted Mr. Kee of assault with a dangerous weapon in Indian country. After his trial and sentence, Mr. Kee filed this timely appeal.

## II

Mr. Kee's appeal is relatively narrow, and the parties agree on almost everything. Both Mr. Kee and the government acknowledge that because Mr. Kee did not object at trial, we review for plain error, which requires Mr. Kee to show that "(1) an error occurred; (2) the error was plain; (3) the error affected . . . substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of a judicial proceeding." *United States v. Wolfname*, 835 F.3d 1214, 1217 (10th Cir. 2016). The government affirmatively concedes that Mr. Kee has satisfied the first and second of his four required showings for plain error and offers no argument against Mr. Kee's argument as to the fourth required showing. The only active disagreement,

then, is whether the government's *Doyle* violations affected Mr. Kee's substantial rights.

In *Doyle*, the Supreme Court extended *Miranda*'s protection against self-incrimination by establishing that a defendant cannot be impeached for exercising his *Miranda* rights.

> Despite the importance of cross-examination, we have concluded that the *Miranda* decision compels rejection of the State's position. The warnings mandated by that case, as a prophylactic means of safeguarding Fifth Amendment rights . . . require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. . . Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Doyle*, 426 U.S. at 617–618.

At trial, the prosecutor asked Mr. Kee during cross-examination about the fact that he had not spoken about his side of the story until his testimony at trial. Then, in both initial closing argument and in rebuttal, the prosecutor emphasized that Mr. Kee was sharing his side of the story for the first time at trial. It would be hard to find a more clear-cut violation of the standard laid out in *Doyle*.

Despite that, Mr. Kee's conviction could still be upheld under plain error review if the violation of his due process rights failed to affect his substantial rights. Mr. Kee's substantial rights were affected if there is "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United*

5

*States v. Jones*, 74 F.4th 1065, 1072 (10th Cir. 2023). A "reasonable probability" only requires that the Court cannot "be confident that the jury would have returned the same verdict had the [error] not occurred." *Banks v. Reynolds*, 54 F.3d 1508, 1521 (10th Cir. 1995).

The Court cannot be confident that the jury would have returned the same verdict had the error not occurred. The government had very little hard evidence to use to impeach Mr. Kee's claim of self-defense—no video, no third-party witnesses, no physical evidence inconsistent with Mr. Kee's testimony. Count 2 is nothing but a credibility contest between two proven liars, making any doubt the government was able to cast on Mr. Kee's testimony beyond what could also be cast on Ms. Chinchillas of great importance to the verdict. The government could have complied with *Doyle* and only impeached Mr. Kee with his pre-*Miranda* silence, but the same impeachment would have applied to Ms. Chinchillas in the months after the event when she chose not to say anything to law enforcement about the alleged attack. It is only Mr. Kee's post-*Miranda* silence which the government could count on to stand alone and apart from any matching vulnerability in Ms. Chinchillas. The government's repeated reference to Mr. Kee's post-*Miranda* silence served only one purpose—to cause jurors to make a negative inference about Mr. Kee's truthfulness based on the mere fact that he asserted his constitutional right. And, in a close case

6

like this one, where the outcome hinges on credibility, this violation of Mr. Kee's due process rights is more than enough to constitute a violation of his substantial rights.

### III

For the foregoing reasons, Mr. Kee's conviction and sentence are **VACATED** and his case is **REMANDED** for further proceedings consistent with this opinion.