FILED
United States Court of Appeals
Tenth Circuit

August 12, 2025

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TRAQUEVIS DEWAYNE HARDY,

    Defendant - Appellant.

No. 24-8006

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:23-CR-00053-SWS-1)**

_____

Robert T. Fishman, Ridley, McGreevy & Winocur, PC, Denver, Colorado, appearing for Appellant.

Paige N. Hammer, Assistant United States Attorney (Stephanie I. Sprecher, Acting United States Attorney, with her on the brief), Office of the United States Attorney for the District of Wyoming, appearing for Appellee.

_____

Before **HARTZ**, **MATHESON**, and **BACHARACH**, Circuit Judges.

_____

**MATHESON**, Circuit Judge.

_____

A jury convicted Traquevis Dewayne Hardy of conspiracy to distribute at least 40 grams of fentanyl. The district court sentenced him to 168 months in prison. Mr. Hardy appeals his conviction and sentence. He argues the district court erred at

(1) an in-chambers conference by announcing an evidentiary ruling in his absence and thus denying his due process right to be present;

(2) trial by admitting evidence under Federal Rule of Evidence 404(b); and

(3) sentencing, by relying on uncorroborated hearsay to calculate the drug quantity attributable to him under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines").

Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm Mr. Hardy's conviction, vacate his sentence, and remand for resentencing.

## I.    BACKGROUND

### A.  *Factual History*

On October 25, 2022, Cheyenne Police Department officers received a call about a man who appeared to be unconscious in a vehicle. The officers responded and arrested Derek Ascherin after finding drug paraphernalia and 23.87 grams of suspected fentanyl pills on his person and in his car.

During his investigation of Mr. Ascherin, Drug Enforcement Administration Task Force Officer Craig Sanne suspected Mr. Hardy was supplying Mr. Ascherin with fentanyl. After obtaining a search warrant to inspect Mr. Hardy's Facebook profile for the period between July and December 2022, he found messages between Mr. Hardy and others about the availability, price, quantity, and logistics of obtaining fentanyl.

On April 15, 2023, officers responded to a call about suspected drug use in a vehicle. They found Mr. Hardy in the front passenger seat and arrested him on an active arrest warrant. The officers found nine fentanyl pills on and around his seat.

B. *Procedural History*

A grand jury in the District of Wyoming indicted Mr. Hardy on one count of conspiracy to distribute at least 40 grams of fentanyl between July 1, 2022, and December 29, 2022, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(B).  After a three-day trial, a jury found Mr. Hardy guilty.

At sentencing, the district court found that Mr. Hardy was responsible for 1,773 grams of fentanyl and imposed a 168-month sentence.  The court overruled Mr. Hardy's objection that the drug quantity calculation was based in part on unreliable hearsay.

Mr. Hardy timely appealed.

We provide additional procedural details later as relevant to the issues on appeal.

## II.  DISCUSSION

On appeal, Mr. Hardy argues the district court:

(A) Plainly erred in denying his due process right to be present at a critical stage of the proceedings when it ruled on the admissibility of alleged coconspirator statements in his absence;

(B) Plainly erred in admitting evidence under Rule 404(b) that he possessed user-amounts of fentanyl when arrested on April 15, 2023; and

(C) Clearly erred in relying on unreliable hearsay to calculate the total drug quantity attributable to him for sentencing purposes.

We reject Mr. Hardy's first and second arguments and affirm his conviction.  On the third argument, we vacate his sentence and remand for resentencing.

### A. *Absence from the* James *Hearing Ruling*

Mr. Hardy argues that his absence from the district court chambers conference announcing the pretrial ruling on the admissibility of coconspirator statements violated due process. Because he did not object in the district court on this ground, we review for plain error. *United States v. Flechs*, 98 F.4th 1235, 1252 (10th Cir. 2024). He must show plain error "even when the underlying error is constitutional." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 733 (10th Cir. 2005) (en banc). We discern no error, let alone plain error.

### 1. **Standard of Review**

To establish plain error, the defendant must show "(1) an error occurred; (2) the error was plain; (3) the error affected . . . [his] substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of a judicial proceeding." *United States v. Kee*, 129 F.4th 1249, 1252 (10th Cir. 2025) (quoting *United States v. Wolfname*, 835 F.3d 1214, 1217 (10th Cir. 2016)).

An error is "plain" when it is "obvious" or "clear" under current, well-settled law. *United States v. Faunce*, 66 F.4th 1244, 1253 (10th Cir. 2023) (quoting *United States v. Garcia*, 946 F.3d 1191, 1201-02 (10th Cir. 2020)); *United States v. Ibarra-Diaz*, 805 F.3d 908, 929 (10th Cir. 2015), which generally requires on-point precedent from the Supreme Court or the Tenth Circuit. *United States v. Piper*, 839 F.3d 1261, 1268 (10th Cir. 2016).

2. **Legal Background**

    a. *Fifth Amendment*

Under the Fifth Amendment, a criminal defendant has a "right to be present at a proceeding 'whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *United States v. Gagnon*, 470 U.S. 522, 526 (1985) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)). "That is, '[t]he presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *United States v. Beierle*, 810 F.3d 1193, 1198 (10th Cir. 2016) (alteration in original) (quoting *Gagnon*, 470 U.S. at 526). But "this privilege of presence is not guaranteed 'when presence would be useless, or the benefit but a shadow.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987) (quoting *Snyder*, 291 U.S. at 106-07).

We have held "without qualification that a defendant had a constitutional right to be present at summations, jury instructions, and the return of the jury verdict." *Larson v. Tansy*, 911 F.2d 392, 394 (10th Cir. 1990). But that right does not extend to proceedings involving "purely legal issues," such as a jury instruction conference, *Beierle*, 810 F.3d at 1199; *Larson*, 911 F.2d at 395, or a conference to respond to a jury's question on a legal issue during deliberations, *Esnault v. Colorado*, 980 F.2d 1335, 1337 (10th Cir. 1992); *see also United States v. Gonzalez*, 596 F.3d 1228, 1243-44 (10th Cir. 2010). For court conferences that "traditionally encompass[] purely legal issues, . . . it will be a rare case where a defendant can establish that his presence was essential to his opportunity to present his defense." *Larson*, 911 F.2d at 395; *see also Deschenes v. United States*,

224 F.2d 688, 693 (10th Cir. 1955) ("[T]he exclusion of a defendant . . . from the courtroom during argument on a question of law does not violate defendant's constitutional right to be present at every step of the proceedings.").

b.  *Coconspirator statements*

Federal Rule of Evidence 801(d)(2)(E) provides that a statement "made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay if it is offered against that party.  "Before admitting evidence under this rule," a court "must determine that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy."  *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (quoting *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994)).

"A *James* hearing is a proceeding to determine the admissibility of a statement made by a co-conspirator."  *United States v. Garcia*, 74 F.4th 1073, 1130 (10th Cir. 2023) (citing *United States v. James*, 590 F.2d 575 (5th Cir. 1979) (en banc)).  "[T]he preferred order of proof in determining the admissibility of coconspirator statements is first for the district court to hold a *James* hearing 'outside the presence of the jury to determine by a preponderance of the evidence the existence of a predicate conspiracy.'"  *United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (citation omitted) (quoting *Urena*, 27 F.3d at 1491); *United States v. Gonzalez-Montoya*, 161 F.3d 643, 648 (10th Cir. 1998) (reiterating "our strong preference" for *James* hearings when the prosecution relies on coconspirator statements).

3. **Additional Procedural History**

Mr. Hardy moved for a *James* hearing and a pretrial determination on the admissibility of alleged coconspirator statements under Rule 801(d)(2)(E).

On the Friday before trial, the district court held a *James* hearing. Mr. Hardy was present. Officer Sanne testified about Facebook messages showing that alleged coconspirators, including Mr. Ascherin, purchased fentanyl pills from Mr. Hardy to sell to others.

After lengthy testimony about the messages, the district court asked the Government to file a motion identifying the specific statements of third parties it believed were admissible coconspirator statements. The court said it was concerned about interdependence among the defendant and alleged coconspirators and how these communications "were in the course of and in furtherance of the conspiracy [to distribute fentanyl] as opposed to just a drug sale." App., Vol. V at 162. It also asked for any additional arguments regarding foundation and authentication for the Facebook messages. The Government submitted its motion on Saturday. Mr. Hardy filed an opposition on Sunday.

On Monday, the district court held an in-chambers conference without Mr. Hardy. It ruled that (1) the Government presented sufficient evidence to link the Facebook account to Mr. Hardy, (2) three individuals were coconspirators whose statements were admissible under Rule 801(d)(2)(E) because they were made in furtherance of the conspiracy, and (3) certain fentanyl purchasers were not coconspirators but their statements were admissible under Rule 804(b)(3) as statements against Mr. Hardy's

interest.  The parties did not make additional arguments at the conference, but the court allowed them to ask clarifying questions about its rulings and to restate any objections for the record.

### 4.  **Analysis**

The district court did not err.  Mr. Hardy was present at the *James* hearing, including Officer Sanne's testimony regarding the Facebook messages.  His counsel cross-examined Officer Sanne.  Upon the court's request, both the Government and defense counsel submitted additional filings after the hearing.  Mr. Hardy was not present when the court announced its rulings.  He did not request to be at the conference and defense counsel did not object to his absence.

Mr. Hardy's absence at the conference did not violate due process.  There is "no indication that his presence at the . . . hearing in this case would have been useful in ensuring a more reliable determination as to" the admissibility of the Facebook messages. *Stincer*, 482 U.S. at 747.  Although he argues "he could have provided counsel with information about the meaning, context, and purpose of the statements in question," Aplt. Br. at 11, he had the opportunity to do so at the Friday *James* hearing before trial and before his counsel submitted a written response on Sunday to the Government's supplemental filing.

No evidence was introduced and no arguments were made at the in-chambers conference.  Rather, the district court ruled based on the Friday *James* hearing testimony and the parties' written arguments.  "[T]here is no indication that [Mr. Hardy] 'could have done anything had he been at the hearing nor would he have gained anything by

8

attending.'" *Stincer*, 482 U.S. at 747 (alterations adopted) (quoting *Gagnon*, 470 U.S. at 527); *see also Snyder*, 291 U.S. at 106-07 (no due process right when the defendant's "presence would be useless, or the benefit but a shadow").

Because the district court held the in-chambers conference solely to state its legal rulings, and because Mr. Hardy's presence would not have contributed to the fairness of the proceeding, his due process argument fails. *See Beierle*, 810 F.3d at 1199. The court did not err.[1]

## B. *Rule 404(b) Evidence*

Mr. Hardy argues the district court plainly erred by admitting evidence that he possessed user-amounts of fentanyl when he was arrested on April 15, 2023, because (1) the court did not specifically identify the purpose for its admission and (2) there was no permissible reason to admit the evidence. Even assuming an error that was plain, Mr. Hardy has failed to show it affected his substantial rights.

### 1. Standard of Review

Because Mr. Hardy's counsel did not object to the introduction of this Rule 404(b) evidence, we review for plain error. *See United States v. Wilson*, 107 F.3d 774, 782 (10th Cir. 1997).

---

[1] Mr. Hardy's argument also fails because any error would not be plain. *See Faunce*, 66 F.4th at 1254. No circuit has addressed whether a defendant has a due process right to be present at a *James* hearing, let alone be present for only the court's legal ruling. At least one circuit has held that a defendant does not have a Sixth Amendment right to be present at a pretrial *James* hearing. *See United States v. Pepe*, 747 F.2d 632, 653-54 (11th Cir. 1984).

As noted above, to establish plain error, the defendant must show "(1) an error occurred; (2) the error was plain; (3) the error affected . . . [his] substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of a judicial proceeding." *Kee*, 129 F.4th at 1252 (quoting *Wolfname*, 835 F.3d at 1217).

A defendant's "substantial rights were affected if there is 'a reasonable probability that, but for the error, the outcome of the proceeding would have been different.'" *Id.* (quoting *United States v. Jones*, 74 F.4th 1065, 1072 (10th Cir. 2023)). "A 'reasonable probability' only requires that the Court cannot 'be confident that the jury would have returned the same verdict had the [error] not occurred.'" *Id.* (alteration in original) (quoting *Banks v. Reynolds*, 54 F.3d 1508, 1521 (10th Cir. 1995)).

2. **Legal Background**

Federal Rule of Evidence 404(b)(1) prohibits the admission of evidence of "any other crime, wrong, or act" to show a defendant's propensity to commit bad acts. But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). We apply a four-factor test when reviewing the admissibility of evidence under Rule 404(b):

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a [Fed. R. Evid.] 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) . . . the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Joseph*, 108 F.4th 1273, 1284 (10th Cir. 2024) (alteration in original)

(quoting *United States v. Davis*, 636 F.3d 1281, 1297 (10th Cir. 2011)).

"In addition, the government must precisely articulate the purpose for which the

evidence is offered, and the trial court must specifically identify the purpose for which it

is admitted.  However, failure to do so is harmless error if the purpose for admitting the

evidence is apparent from the record and the decision to admit it is correct."

*United States v. Hardwell*, 80 F.3d 1471, 1488 (10th Cir. 1996); *see also United States v.*

*Youts*, 229 F.3d 1312, 1317 (10th Cir. 2000) ("[A] broad statement merely invoking or

restating Rule 404(b) will not suffice." (alteration in original) (quotations omitted)).

3.  **Additional Procedural History**

The Government's pretrial filings included a notice to offer evidence under

Rule 404(b) of Mr. Hardy's April 15, 2023 possession of nine fentanyl pills and his two

2018 felony convictions for delivery and possession of methamphetamine.  Mr. Hardy

did not respond.  The court ruled the evidence admissible.[2]

4.  **Analysis**

Even assuming Mr. Hardy has established the first two steps of plain error,[3] he has

not shown the third step—"a reasonable probability that, but for the error, the outcome of

---

[2] On appeal, Mr. Hardy does not contest the admission of the two 2018 convictions, so we confine our analysis to the April 15, 2023 drug possession evidence.

[3] We have said that "we are unable to discern how evidence that Defendant possessed personal-usage amounts of controlled substances is relevant to show that he intended to distribute narcotics in the instant case." *United States v. Edwards*, 540 F.3d

11

the proceeding would have been different." *Kee*, 129 F.4th at 1252 (quoting *Jones*, 74 F.4th at 1072). Mr. Hardy argues there was "a reasonable probability that the jury convicted him based upon his propensity for committing drug offenses" because "the jury was only presented with physical evidence that he possessed a grand total of nine [fentanyl pills]—exactly what a user might be expected to possess." Aplt. Br. at 15-16. But Mr. Hardy's argument ignores the substantial evidence of his fentanyl distribution.

At trial, the Government introduced Facebook messages between Mr. Hardy and at least a dozen fentanyl purchasers. Two purchasers testified that they bought hundreds of fentanyl pills from Mr. Hardy and either resold or redistributed some of them. Two purchasers also testified that Mr. Hardy sometimes had hundreds of pills on him— amounts consistent with distribution rather than personal use. *See* App., Vol. II at 327, 336-38 (state investigator testifying that personal usage varies but is often "between 5 and 20 pills" and distribution amounts are often between 100 and 1,000 pills). And Mr. Hardy stated to a purchaser that he "moved . . . a boat and a half in two days," which is 1,500 fentanyl pills. *Id.* at 435; *see also id.* at 335 (explaining a "boat" is 1,000 fentanyl pills). Further, Mr. Ascherin, a coconspirator, was arrested with over 200 fentanyl pills days after asking to meet Mr. Hardy to purchase 500 pills.

---

1156, 1163-64 (10th Cir. 2008) (evidence of "prior possession of personal-user amounts of drugs did not corroborate witnesses' testimony regarding distribution," and could only corroborate testimony "through an impermissible propensity argument," but finding the admission harmless considering the overwhelming evidence against the defendant).

The Government also introduced messages between Mr. Hardy and his alleged supplier, Scotty Be. The two discussed Mr. Hardy's purchasing fentanyl pills in amounts of 40, 50, 60, and "[a] hundo pack" (100 pills) on multiple occasions. *Id.* at 302, 452-62. In at least one message, Scotty Be agreed to ride with Mr. Hardy to a sale of fentanyl pills.

Given this evidence of conspiracy to distribute at least 40 grams of fentanyl (400 pills),[4] there is no reasonable probability that admission of Mr. Hardy's fentanyl possession of nine pills on April 15, 2023, four and one-half months after the charged conspiracy, affected the jury's guilty verdict. *See United States v. McGlothin*, 705 F.3d 1254, 1268 (10th Cir. 2013) (finding, on plain error review, the admission of prior incidents of gun possession under Rule 404(b) did not affect the jury's guilty verdict given the overwhelming evidence of constructive possession of a gun); *see also United States v. Edwards*, 540 F.3d 1156, 1164 (10th Cir. 2008) (finding, in light of the overwhelming evidence of the defendant's "involvement in this large-scale drug-trafficking operation, his heavy, habitual, drug use, and his involvement with firearms," the "minimal evidence of his two prior drug possession convictions did not substantially influence the outcome of his trial").

Further, Mr. Hardy does not explain how his possession of user-amounts of fentanyl on April 15, 2023 affected the jury's verdict in light of his admission at trial that

---

[4] One fentanyl pill weighs approximately 0.1 gram. *See* App., Vol. II at 495.

he was a fentanyl user and addicted to the drug. *See* App., Vol. II at 119, 563-64; *United States v. McGrew*, 17 F. App'x 552, 553 (9th Cir. 2001) (unpublished) ("Any possible prejudice associated with admitting evidence of her prior conviction for possession of cocaine rocks would have been overwhelmed by her own admission that she was a habitual user of crack cocaine.").

Finally, the Government did not put this evidence "before the jury again, in closing argument or otherwise." *United States v. Battles*, 745 F.3d 436, 453 (10th Cir. 2014). And the district court specifically instructed the jury that Mr. Hardy was not on trial for his April 15, 2023 fentanyl possession and that this evidence may not be considered for any purpose other than determining his "motive, opportunity, intent, and/or knowledge and, potentially, absence of mistake." App., Vol. II at 505-06; *see Battles*, 745 F.3d at 452-53 (finding any impact of a witness's "brief answers" to two questions about the defendant destroying evidence was "negligible" when the government did not reference her answers and the district court provided a limiting instruction).

Based on the Government's substantial evidence that Mr. Hardy distributed large quantities of fentanyl, Mr. Hardy's admission at trial that he used fentanyl, and the district court's limiting instruction, we conclude there was no reasonable probability that evidence of Mr. Hardy's possession of user-amounts of fentanyl at the time of his arrest affected the jury's guilty verdict.

C. *Drug Quantity Calculation*

Mr. Hardy argues the district court clearly erred in finding he was responsible for 1,773 grams of fentanyl because it relied on unreliable hearsay from a confidential source. We agree.

1. **Standard of Review**

We review for clear error a district court's factual findings of drug quantities attributable to a defendant under the Sentencing Guidelines. *United States v. Ortiz*, 993 F.2d 204, 207 (10th Cir. 1993). Drug quantities used to calculate the Guidelines range are clearly erroneous when they lack "factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *United States v. Todd*, 515 F.3d 1128, 1135 (10th Cir. 2008) (quoting *United States v. Dalton*, 409 F.3d 1247, 1251 (10th Cir. 2005)).

2. **Legal Background**

a. *Drug quantity calculation*

To determine the Guidelines range, the district court must consider "all quantities of contraband with which [the defendant] was directly involved." U.S.S.G. § 1B1.3 cmt. n.3. If the government did not seize all of the drugs, the court must "approximate the quantity of the controlled substance." *Id.* § 2D1.1 cmt. n.5; *see also Ortiz*, 993 F.2d at 207. To do so, the court may rely on government estimates if they possess "sufficient indicia of reliability to support [their] probable accuracy." *Ortiz*, 993 F.2d at 207 (quotations omitted); *see also United States v. Ruby*, 706 F.3d 1221, 1229 (10th Cir. 2013); *United States v. Cook*, 949 F.2d 289, 296 (10th Cir. 1991).

15

"The government has the burden of proving the quantity of drugs for sentencing purposes by a preponderance of the evidence." *Ortiz*, 993 F.2d at 207. "[W]hen choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution." *Id.* at 208 (alteration in original) (quoting *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990)).

The "fact that [a] confidential informant had proven reliable in the past is simply not 'sufficient corroboration by other means' of the informant's information regarding the quantity of [drugs] that [the d]efendant distributed." *Id.* (remanding for resentencing due to clear error). Also, drug calculations are insufficiently corroborated when they are contradicted by the record or require impermissible extrapolation. *See United States v. Richards*, 27 F.3d 465, 469 (10th Cir. 1994) (remanding for resentencing because a witness's in-court testimony "flatly contradict[ed]" the government's drug estimate); *United States v. Roberts*, 14 F.3d 502, 521-22 (10th Cir. 1993) (remanding for resentencing because the government's extrapolation from a witness's statement was mainly uncorroborated and partially contradicted by other evidence).

b. *Sentencing hearsay*

"Unlike at a criminal trial where the Federal Rules of Evidence limit the types of admissible evidence, at a sentencing hearing the court can have access to any relevant information, as long as it adheres to a preponderance of the evidence standard." *Ruby*, 706 F.3d at 1227; *see also* U.S.S.G. § 6A1.3(a) (requiring "information has sufficient indicia of reliability to support its probable accuracy").

Hearsay statements are "presumptively unreliable" for trial purposes, *Idaho v. Wright*, 497 U.S. 805, 823 (1990), but "may be considered at sentencing if they bear 'some minimal indicia of reliability,'" which is a "low hurdle," *United States v. Cook*, 550 F.3d 1292, 1296 (10th Cir. 2008) (quoting *United States v. Browning*, 61 F.3d 752, 755 (10th Cir. 1995)). "Corroborating evidence is often key to determining whether a statement is sufficiently reliable." *Ruby*, 706 F.3d at 1229.

3. **Additional Procedural History**

a. *Presentence Report fentanyl calculation*

The Presentence Report ("PSR") calculated the total fentanyl quantity attributable to Mr. Hardy as 1,773 grams based on interviews, messages, and testimony by fentanyl purchasers. An interview with a confidential source ("CS"), accounted for 1,210 grams.

The PSR stated that Officer Sanne and another investigator interviewed the CS on October 7, 2022. According to the PSR, the CS told them "he/she purchased approximately 100 fentanyl pills from **HARDY** approximately every two or three days for the previous year[5] (9000pills/900grams)," paid $250.00 for 100 fentanyl pills, occasionally observed Mr. Hardy in possession of approximately 1,000 fentanyl pills when purchasing fentanyl from him, and communicated with Mr. Hardy on Facebook

---

[5] The CS reported buying fentanyl from Mr. Hardy from October 7, 2021, to October 7, 2022. Nearly nine of those months—October 7, 2021, to June 30, 2022—preceded the charged conspiracy—July 1, 2022, to December 29, 2022. Just over three months—July 1, 2022, to October 7, 2022—overlapped with the conspiracy.

Messenger.  App., Vol. III at 24—SEALED.[6]  The investigators looked through the CS's

Facebook messages and "observed several messages between CS and **HARDY** that

indicated **HARDY** was CS's source of supply for controlled substances."  *Id.*  The PSR

stated, "During the course of this interview and other investigations, CS provided

information that was accurate and reliable."  *Id.*  The PSR's final Guidelines calculation

estimated the fentanyl amount the CS purchased from Mr. Hardy to be 1,210 grams

(12,100 pills).[7]

> b.  *Mr. Hardy's objections*

Mr. Hardy objected in writing to the PSR's total quantity of fentanyl, arguing the

calculation was based on unreliable hearsay and unproven Facebook messages.  He also

argued later at sentencing that "whatever was discussed [in] those Facebook messages

was not the amount that was eventually delivered."  App., Vol. II at 611-12.

> c.  *Probation's response*

The Probation Office responded that the CS's Facebook messages with Mr. Hardy

corroborated law enforcement's reliance on the CS's interview and that law enforcement

---

[6] The quoted material from the PSR appears in Mr. Hardy's publicly filed brief. *See United States v. Alcazar*, No. 23-2004, 2023 WL 8643189, at *1 n.1 (10th Cir. Dec. 14, 2023) (unpublished).

We cite unpublished opinions for their persuasive value under Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[7] The PSR does not explain why the preliminary estimate was 900 grams (9,000 pills), and the final estimate was 1,210 grams (12,100 pills).  Although this discrepancy would not change the outcome of this appeal, we note it for the district court to address on remand.

found the CS had provided accurate and reliable information. It did not identify any specific Facebook message.

d. *Sentencing*

At sentencing, the Government argued the trial evidence proved Mr. Hardy was responsible for "a minimum of 560 grams," plus "the additional 1200 grams from the interview of the confidential source." *Id.* at 614. The prosecutor explained:

> Detective Sanne was going to come up here with me today but had a family issue and could not come. What I can provide to the Court are—these are—there were an incredibly large number of messages that were provided to the Court that justify this amount.
> We saw that number of messages that were admitted but ones that were not. That confidential source, her messages, were, I believe, part of them, as well, too, that were not admitted. . . .
> So what we have in the end is, it's not relying upon one or two people's statements. It's dozens and dozens of Facebook messages. . . .

*Id.* at 614-15. No specific messages were cited or discussed.

Mr. Hardy reiterated his written objection. The district court overruled his objection, stating:

> There were, in addition to that quantity, as detailed by the presentence report author, the additional messages and information that were posted on the Facebook Messenger account and discussed the various quantities.
> There was also the interviews of confidential sources that were summarized in addition.
> The Court would find, based upon the totality of that information, certainly, I believe that there may be some gap in terms of some of those. But even giving the defendant the benefit of doubt, the Court would find that there is sufficient indicia of reliability, based upon the information, to support that 32 offense—base offense level.

> The various information was corroborated in various ways during testimony at trial as well as on the Facebook communications and the confidential informants' statements.

*Id.* at 617-18.

Based on the foregoing, the district court accepted the PSR's total fentanyl quantity of 1,773 grams, which resulted in a 32 base offense level. A 32 base offense level and a Criminal History Category of VI resulted in a Guidelines range of 210 to 262 months. The court "adjust[ed] downward" one base offense level to "reflect [Mr. Hardy] was on the lower end of the [drug] quantities," *id.* at 648, and adjusted "to the left" one criminal history category to "reflect the aberrant behavior issues and the recent onset of the criminal conduct," *id.* at 653. With a 31 base offense level and a Criminal History Category of V, the Guidelines range was 168 to 210 months.[8] The court sentenced Mr. Hardy to 168 months in prison followed by four years of supervised release.

4. **Analysis**

We agree with Mr. Hardy that the Government did not meet its burden to establish how much fentanyl he distributed. *Ortiz*, 993 F.2d at 207. The district court's reliance on the CS's hearsay statements to add 1,210 grams to Mr. Hardy's drug quantity was clearly erroneous because they lacked the necessary indicia of reliability we require for

---

[8] Without the CS's statements, Mr. Hardy would be responsible for 563 grams of fentanyl, resulting in a 30 base offense level. U.S.S.G. § 2D1.1(c)(5). With a 30 base offense level and a Criminal History Category of V, the Guidelines range would be 151 to 188 months. U.S.S.G. ch. 5, pt. A.

20

out-of-court statements. *See id.*; *Roberts*, 14 F.3d at 519-22. The trial and sentencing record bear this out.

To aid in our analysis, we provide a timeline of relevant dates.



First, the record contradicts the CS's hearsay statements. *See Richards*, 27 F.3d at 469. The CS could not have received 100 fentanyl pills from Mr. Hardy every three days from October 2021 to January 2022, as the CS claimed, because the record shows Mr. Hardy was in custody then, which the Government conceded at oral argument. Oral Arg. at 17:37-57. The Government has not shown, let alone even suggested, that Mr. Hardy could distribute fentanyl while in custody. "The record itself, therefore, tends to undermine, rather than buttress, confidence in the [speaker]'s hearsay statements." *United States v. Fennell*, 65 F.3d 812, 813 (10th Cir. 1995); *see also United States v. Beler*, 20 F.3d 1428, 1433-35 (7th Cir. 1994) (discrepancy between trial testimony and witness's sentencing affidavit estimating drug quantity "was sufficient to raise a question about the reliability of [the witness]'s affidavits").

Second, the Government provided no evidence beyond the CS's "say-so" showing that Mr. Hardy possessed or had access to fentanyl between January and June 2022 when he was not in custody. *See United States v. Cripps*, No. 24-7014, 2025 WL 1444187, at *3 (10th Cir. May 20, 2025) (unpublished). The record lacks evidence showing that

Mr. Hardy used Scotty Be or anyone else as a fentanyl supplier before July 2022. Trial witnesses testified to purchasing fentanyl from Mr. Hardy only between July and December 2022—the charged conspiracy. The CS's statements about distribution between January and June 2022 thus remain "without factual support in the record." *Todd*, 515 F.3d at 1135 (quotations omitted).

Attempting to overcome this shortcoming, the Government points to trial evidence showing that from August to December 2022, Mr. Hardy "had ready access to large quantities of fentanyl from his dealer in Denver, which would allow him to be able to consistently supply the confidential source with 100 fentanyl pills every three days," Aplee. Br. at 21, suggesting that he had similar amounts between January and June. Apart from this evidence saying nothing about distribution to the CS, our cases reject this speculative extrapolation.[9]

Third, the PSR said Facebook messages between the CS and Mr. Hardy supported the 1,210 grams, but neither the PSR, the prosecution, nor the district court identified

---

[9] *See Ortiz*, 993 F.2d at 207-08 (defendant's admission to distributing "pound quantities [of marijuana] every six months" and one-time purchase of nearly one kilogram of marijuana were insufficient to support confidential informant's statement that defendant distributed three pounds of marijuana per week over 18-month period); *Roberts*, 14 F.3d at 521-22 (government's extrapolation from a witness's statements that defendant "received 1 ounce of methamphetamine every two weeks for a year and a half" was mainly uncorroborated and partially contradicted by other evidence); *see also Walton*, 908 F.2d at 1302-03 (evidence that defendants distributed specific quantity of cocaine weekly during five-month period was insufficient to infer they distributed same quantity over a more than two-year period); *see also United States v. Shonubi*, 998 F.2d 84, 89-90 (2d Cir. 1993) (evidence of drug quantity on date of arrest insufficient to infer same quantity on seven prior dates).

those messages. *See Cripps*, 2025 WL 1444187, at *3 ("The government provided no evidence to support [the source]'s statements about the additional 54 kilograms of methamphetamine other than her say-so.").[10]

Fourth, the PSR's reference to the investigators' assertion that the CS had provided reliable information in this and other investigations "is simply not 'sufficient corroboration.'" *Ortiz*, 993 F.2d at 207; *see also United States v. Helding*, 948 F.3d 864, 869-72 (7th Cir. 2020) (vacating sentence when district court failed to determine that out-of-court statements from confidential informants about drug quantity defendant sold had "a modicum of reliability").

\*    \*    \*    \*

The record thus lacks corroboration for the CS's hearsay statement that Mr. Hardy distributed 100 fentanyl pills every three days to the CS for an entire year (1,210 grams/12,100 pills).[11]

---

[10] When pressed on this point at oral argument, the Government cited a Facebook message in Exhibit 24b purportedly showing that, at least once, the CS requested 100 fentanyl pills from Mr. Hardy. Oral Arg. at 14:04-26. But the Government acknowledged the message showed that Mr. Hardy did not sell the CS those 100 fentanyl pills at the CS's proposed price point. *Id.* at 14:26-41; Suppl. App., Ex. 24b. None of the four messages in Exhibit 24b—each sent by Mr. Hardy on the same day in September 2022—substantiate the CS's statement about receiving 100 fentanyl pills from Mr. Hardy every three days for a year. *See Walton*, 908 F.2d at 1302.

[11] Even assuming the Government provided corroboration for the remaining three months—July 1, 2022, to October 7, 2022—the CS's estimated amount would hardly reach 1,210 grams (12,100 pills).

A final note: because Mr. Hardy challenged the reliability of the CS's hearsay statements and the Government failed to corroborate them, "*Ortiz* counsels the government must do more—corroborating witnesses or live testimony from the witness where credibility can be assessed by the court." *Cripps*, 2025 WL 1444187, at *3; *see also United States v. Shonubi*, 998 F.2d 84, 89 (2d Cir. 1993) ("Case law uniformly requires specific evidence—*e.g.*, drug records, admissions or live testimony—to calculate drug quantities for sentencing purposes."). Although the Government tried to call Officer Sanne to testify at the sentencing hearing "in an effort to show that the [confidential] source['s] statements were reliable and corroborated," *Cripps*, 2025 WL 1444187, at *5, he did not testify due to a family issue, adding an extra layer to the uncorroborated hearsay evidence the district court relied upon.

## III.  CONCLUSION

For the foregoing reasons, we (1) affirm Mr. Hardy's conviction and (2) vacate his sentence and remand for resentencing.